# Colder *against* Weaver.

In an action of covenant the court instructed the jury what the true construction of the agreement between the parties was, and directed them that they might take into their consideration the acts and declarations of the parties, to enable them to judge whether the construction the court gave was right. The jury having found a verdict in accordance with the opinion of the court, it was held to be good.

ERROR to the common pleas of *Alleghany* county.

Benjamin Weaver against William Colder, Silas Moore and James K. Moorehead.

Covenant. The declaration set out the agreement between the parties, averred performance by the plaintiff, and set out a breach by defendants in not paying the last instalment of 1400 dollars due, as alleged, twelve months after the date of the articles (30th of November 1835). Defendants pleaded *non est factum,* covenants performed *absque hoc,* &c., and set off. Plaintiff replied no set off, &c.

[Colder v. Weaver.]

The plaintiff, to maintain the issue on his part, read two articles of agreement between the parties dated the 30th of November 1835, viz.

Memorandum of an agreement entered into this 30th day of November 1835, by and between Benjamin Weaver of the city of Pittsburgh of the one part, and William Colder of Harrisburg, Silas Moore of Hollidaysburg and James K. Moorehead of Huntingdon of the other part, witnesseth, that the said Weaver agrees to sell to the said Colder, Moore and Moorehead six teams of horses, together with their necessary harness, blankets, halters, &c., and two good coaches now running in the People's Line between Pittsburgh and Mount Pleasant. He will also use his influence to get exonerated from his bid for carrying the mail on the northern route from Harrisburg to Pittsburgh and have it let to the said Colder, Moore and Moorehead at their bid. He will also agree to transfer his right to and interest in the contract from Pittsburgh to Washington to the said Colder, Moore and Moorehead; and he engages further that he will not run nor be concerned directly nor indirectly in any stage line on the routes from Philadelphia to Pittsburgh, nor on the route from Washington to Pittsburgh, unless by the consent of and in connexion with the said Colder, Moore and Moorehead, during the mail contracts now about to be entered into, viz. four years from the 1st day of January 1836.

In consideration whereof (and provided the arrangement is made with the postoffice department for the said Weaver to get exonerated from any liabilities for not complying with his proposition for carrying the mail on the said northern route) the said Colder, Moore and Moorehead agree to pay the said Weaver 1400 dollars at the time of the delivery of said stock, which shall be between the 8th day of December and the 1st day of January next, 1400 dollars in six months after the said stock is delivered, and 1400 dollars in twelve months after the said delivery of stock, in full consideration of the same. The said Colder, Moore and Moorehead agree further to run the Washington stage (should they get the contract) to the house of the said Weaver in Pittsburgh, and also one of the Philadelphia stages to his house.

It is further agreed between the said parties, that if there can be no arrangement made with the department, the said Colder, Moore and Moorehead agree and bind themselves to carry the mail on the northern route for the said Weaver until the 1st day of April next, for which they are to receive pay at the rate of the said Weaver's bid.

For the performance of the above, the parties bind themselves in the penal sum of 5000 dollars.

Witness our hands and seals, this 30th day of November 1835.

| *Witness*, James Reeside, | BENJAMIN WEAVER, | [L. S.] |
| | James Moorehead. | WILLIAM COLDER, | [L. S.] |
| | SILAS MOORE, | [L. S.] |
| | JAMES K. MOOREHEAD, | [L. S.] |

[Colder v. Weaver.]

N.B. This contract not binding on the said Weaver unless the People's Line Company refuse to take his stock when offered to them, which shall be done immediately, agreeably to a contract that exists between them.

Received, January 2d, 1836, of Silas Moore, 1400 dollars, being the first payment due on stage stock per article of agreement with William Colder, Silas Moore and James K. Moorehead, and Benjamin Weaver.

BENJAMIN WEAVER.

It is agreed by us as parties to the contract, whereas Benjamin Weaver has taken the contracts from Pittsburgh to Washington, Pennsylvania, and the contracts from Harrisburg to Alexandria, and from Alexandria to Pittsburgh, and he agrees to give up said contract, and we indemnify and keep said Weaver from damage he may be liable to in consequence of taking said contract.

James Reeside,                          WILLIAM COLDER,
James Moorehead.                        SILAS MOORE,
                                        JAMES K. MOOREHEAD.

*November 30th,* 1835.

There was much parol evidence given by each party on the subject of the actual value of the stock sold.

That part of the charge which gave rise to the points raised was as follows:

Are there any acts or declarations of the parties which will aid the jury in reaching the intent of the parties to the contract? If there be, it is competent for the jury to take them into consideration in order to explain or render clear that which may be doubtful or obscure in the agreement; for this question dependent upon the intention of the parties is to be decided by the jury: to them the whole case is to be left.

There is certainly no evidence showing an exoneration by the government of the plaintiff's liability on account of his bid; and if, upon applying to the contract the rules of construction which the court has laid down, the jury should come to the conclusion that the intention of the parties was that this exoneration formed a part of the consideration, independent of and in addition to the transfer of the stock, then the value of the stock will become a subject of inquiry with the jury in order to ascertain how much more, if any thing, beyond the two instalments already paid by the defendants ought to be recorded against them. If, however, the minds of the jury are drawn to the same conclusion reached by the court, this question will not arise, and the plaintiff will be entitled to a verdict for the amount still unpaid upon the agreement.

*Findlay,* for plaintiff in error.
*Mahon,* for defendant in error.

[Colder v. Weaver.]

The opinion of the Court was delivered by

HUSTON, J.—B. Weaver, the plaintiff below, in the year 1835 made proposals, or in the usual phrase bid for the contract to carry the mail from Harrisburg to Alexandria, and from Alexandria to Pittsburgh, and also the contract between Washington and Pittsburgh. He offered to carry it at the lowest price or bid, and the contract was to have been given to him. When one person proposes for so large a contract, generally he has partners. Either Mr Weaver had made too low a bid, or thought he had, or his partners thought he had.

Colder and others had bid for the same contract or contracts, but had asked a much higher price. They had carried the mail for some years from Harrisburg to Alexandria, and thence to Pittsburgh, and owned stages and horses. Weaver had also been concerned in a line of stages on the southern route to Pittsburgh, and owned two stages and several teams of horses. Perhaps after Weaver had determined that he could not and would not comply with his bid, and before Colder & Co. knew of this determination, they entered into the contract No. 1, set out in this case, dated the 30th of November 1835.

Afterwards, on the same day, they modified or altered this agreement by No. 2, called by the judge the "small paper." On the first paper alone there might be some difficulty as to the meaning and intention of the parties. Perhaps in all cases where parties have made and signed an agreement, and on the same day, or before any act has been done by either party, a new paper on the same subject, explaining, modifying or altering the first, is drawn and executed, the two are to be taken as forming the contract of the parties; at all events they are to be taken into view in deciding on any one of them. They were both given in evidence together by the plaintiff below in this case. Weaver did give up the contract; Colder & Co. carried the mail on a temporary contract until April 1836; and then, on a reletting, it was taken by other persons. Colder & Co. got the stages and teams of horses, and they paid the first and second payments of 1400 dollars. This suit was to recover the third sum of 1400 dollars.

The dispute arose on that part of the first agreement which was in these words: "in consideration whereof (and provided the arrangement is made with the postoffice department for the said Weaver to get exonerated from any liabilities for not complying with his proposition to carry the mail on the said northern route) the said Colder, Moore and Moorehead agree to pay to the said Weaver 1400 dollars at the time of delivery of the said stock, which shall be between the 8th of December and the 1st of January next, and 1400 dollars in six months from that time, and 1400 dollars in twelve months from the delivery of the said stock, in full consideration for the same."

It was strongly contended that the words in the parenthesis formed a part of the consideration of the 4200 dollars; and provided the

VII.—2 P*

[Colder v. Weaver.]

event contemplated did not occur the money was not, or not all, to become due. Now it is easy to see how it might be very material to Weaver whether he was exonerated from his contract or sued for not complying with it, and why he might have stipulated that the whole contract should be void, and he keep his teams if compelled to carry the mail; but the words will not perhaps bear such construction. It is not however easy to see why the property sold would be worth more or less to Colder & Co. by reason of Weaver being exonerated or not.

The second or small agreement, in these words, "it is agreed by us as parties to the contract, whereas B. Weaver has taken contracts from Pittsburgh to Washington, and the contracts from Harrisburg to Alexandria, and from Alexandria to Pittsburgh, and he agrees to give up the said contracts, and we indemnify and keep Weaver from damage he may be liable to in consequence of taking said contracts," signed by the three defendants, seems to be inconsistent with the defendants' construction of the proviso in the first paper; it is to induce Weaver to do the very thing which before was contingent, and to indemnify him in that course. It cannot be that in one hour they agree to indemnify him in doing a thing, and as soon as he had renounced the contract they intended to charge him 1400 dollars because he had renounced it.

I suspect the parties either did not in making their contract stipulate for all contingencies, or if they did understand each other fully the writings are defectively drawn. If not so, and the parenthesis was intended as the defendants below contended, the second paper is an alteration of the contract, by which they are bound. Weaver did give up his contract, and from this paper did so at their instance. They got his property and must pay for it.

After coming to this conclusion from the face of the papers, the court directed the jury that they might take into consideration the declarations and acts of the parties, in order to ascertain whether the true intent and meaning was as the court thought was to be gathered from the writing alone; and the jury found for the plaintiff: and we see no error.

Judgment affirmed.